# EXHIBIT 1

# BRAUNHAGEY & BORDEN LLP

San Francisco & New York

**J. Noah Hagey, Esq.**
Managing Partner
hagey@braunhagey.com

July 29, 2025



**VIA EMAIL & FEDEX**

Mike Cessario, CEO
Tiffany Lee, General Counsel
Supplying Demand Inc. d/b/a Liquid Death
4077 Redwood Ave
Los Angeles, CA 90066
Email: mike@liquiddeath.com
tiffany@liquiddeath.com
info@liquiddeath.com

**Re:   Cease and Desist (or Invite Legal Death) from Willful Infringement of DEATH WISH COFFEE CO.® Trademarks and Goodwill**

Dear Mr. Cessario and Ms. Lee:

Greetings.  We are trademark counsel for Death Wish Coffee Co., the folks brewing strong coffee and cheating death since 2011.

We write regarding your company, Supplying Demand Inc. d/b/a Liquid Death ("SDI"), and its recent invitation of *legal* death by seeking to register U.S.P.T.O. trademarks for LIQUID DEATH and LIQUID DEATH DEATHUCCINO in the *same* coffee market, *same* coffee product categories, using the *same* formative name … DEATH … as Death Wish.  These "Infringing Applications," App. Nos. 99166850, 99166851, 99166846 and 99166849, were filed by SDI earlier this year and are awaiting review by the P.T.O.  In them, you assert under penalty of perjury a near-term interest in launching LIQUID DEATH coffee drinks, *i.e.*, in competition with DEATH WISH COFFEE CO.®.  Those products and infringing marks must never launch.

SDI and its many marketing executives and staff have been acutely aware of DEATH WISH COFFEE CO.® for years.  The brands have engaged in playful banter on social media.  Nonetheless, you appear to have embarked on an overt invasion of our client's property: not unlike the masked men terrorizing Charles Bronson's home and family in the original *Death Wish* movie.  To wit:  SDI's Infringing Applications seek to directly encroach and trespass on Death Wish's longstanding intellectual property, to willfully swamp and damage our client's brands, and to undermine and confuse the market.

Just like Bronson, our client isn't taking the assault lightly and intend to spare no expense to ensure the protection of their property.  Needless to say, if SDI's home and goodwill were being invaded, you would react precisely the same … if, for example, our client were to launch DEATH WISH water.  Accordingly, in lieu of seeking immediate injunctive and other relief, Death Wish is requesting that you responsibly address its concerns by: (a) withdrawing SDI's Infringing Applications, and (b) confirming in writing that SDI has not, and will not, launch any coffee product using a DEATH-formative mark or branding.  Absent assurances, our client will

July 29, 2025
Page 2

have no choice but to seek immediate injunctive and other relief to enjoin SDI's intended willful infringements of Death Wish's property.

    A.    **Background**

Death Wish has been roasting high-octane, death-defying coffee since 2011. It has a legendary reputation and loyal following of caffeine enthusiasts across all 50 U.S. states and beyond. It is one of the top-selling premium coffee brands in America, is sold in ready-to-drink and other formats, and is distributed in thousands of major retailers, grocers, convenience stores, and other outlets – the same locations which sell your LIQUID DEATH water products.

Death Wish protects its products and goodwill. It has repeatedly and successfully sued – and enjoined – infringers of its marks and owns numerous trademark registrations for its brand in the United States and around the world, including for its name, logo, and other DEATH-formative marks, such as DEATH CUPS® and GINGERDEAD® (the "DEATH WISH Marks"):

**Selected Death Wish Coffee Trademark Registrations**

| | |
|---|---|
| DEATH WISH COFFEE CO. ® | Reg No. 4605090<br><br>Class 30 for Coffee; Coffee beans |
| DEATH WISH COFFEE CO. ® | Reg No. 5275128<br><br>Class 30 for Coffee; Coffee beans |
| DEATH WISH COFFEE CO. ® | Reg. No. 7465589<br><br>Class 25 for Clothing and apparel, namely, shirts, t-shirts, tank tops, sweatshirts, hoodies, jackets, windbreakers, shorts, sweatpants, pajama pants, hats, caps being headwear, scarves, socks, baby bodysuits |
| DEATH CUPS ® | Reg. No. 5412124<br><br>Class 30 for Coffee, espresso; Coffee-based beverages, espresso-based beverages; preparations for making beverages, namely, concentrates and powders for making coffee, tea, coffee-based beverages, espresso-based beverages; pods, namely, cartridges for making coffee, espresso, tea, hot cocoa, coffee-based beverages, espresso-based beverages; Coffee, espresso contained in single serving or portion controlled containers, capsules and pods; Coffee, espresso contained in single serving or portion controlled containers, capsules and pods for use in brewing machines and coffee makers. |
| GINGERDEAD ® | Reg. No. 7025542<br><br>Class 30 for coffee, espresso, tea, cocoa; coffee-based beverages, espresso-based beverages, tea-based beverages, cocoa-based beverages; preparations for making beverages, namely, concentrates and powders for making coffee, |

July 29, 2025
Page 3

|  | tea, hot cocoa, coffee-based beverages, espresso-based beverages, tea-based beverages and cocoa-based beverages; pods, namely, cartridges for making coffee, espresso, tea, hot cocoa, coffee-based beverages, espresso-based beverages, tea-based beverages and cocoa-based beverages; coffee, espresso, tea or cocoa contained in single serving or portion controlled containers, capsules and pods; coffee, espresso, tea or cocoa contained in single serving or portion controlled containers, capsules and pods for use in brewing machines and coffee makers; powdered coffee, espresso, tea or cocoa; ground coffee, espresso, tea or cocoa |
|---|---|

### B. Death Wish's Success in Protecting its Brand

Death Wish protects its brand and has deep-sixed many infringers who have tried to enter the coffee space under DEATH-formative marks. For example, Death Wish has obtained multiple federal court injunctions sounding the death knell for infringement:

### Federal Court Injunctions Against DEATH-Formative Marks

| Infringing Mark | Outcome |
|---|---|
| DEATH BEFORE DECAF | *Death.* Order permanently enjoining Defendant from using "the mark DEATH BEFORE DECAF or any other trademark, tagline, brand, trade name or other mark including the term "death" in connection with coffee, coffee beans, coffee pods or any products or services related to coffee, including, without limitation, merchandise or café services." *Death Wish Coffee LLC v. Death Before Decaf Pty Ltd.*, Case No. 1:23-cv-07605, (S.D.N.Y. Dec. 26, 2023) |
| DEATH HELL COFFEE | *Death.* Order permanently enjoining Defendant "from using the Death Hell Coffee mark, the Death Hell Coffee logo, or Death Hell Coffee packaging […] in connection with the sale or offer for sale of coffee and coffee beans." *Death Wish Coffee LLC v. Death Hell Coffee LLC*, Case No. 1:23-cv-01100 (M.D. Fla. April 15, 2024) |

Death Wish also has blocked the registration of numerous DEATH-formative trademarks at the U.S.P.T.O. Trademark Trial and Appeal Board:

### TTAB Orders Rejecting DEATH-Formative Trademarks

| Infringing Mark | Outcome |
|---|---|
| TRIPLE DEATH COFFEE | *Death.* Order cancelling registration for TRIPLE DEATH COFFEE in Class 30 for "Coffee sold in single-serving containers for use in brewing machines." *Death Wish Coffee LLC v. Divergent IP LLC*, Cancellation No. 92084309 (TTAB May 30, 2024) |

July 29, 2025
Page 4

| | |
|---|---|
| DEATHWISH BURRITOS | *Death.* Order refusing registration for DEATHWISH BURRITOS in Class 34 for "Restaurant services." *Death Wish Coffee LLC v. Tony Boloney Holding LLC*, Opposition No. 92084365 (TTAB May 15, 2024) |
| DEATHWISH DISCS | *Death.* Order refusing registration for DEATHWISH DISCS in Class 16, 25, and 35 for apparel and related goods. *Death Wish Coffee LLC v. Deathwish Discs LLC*, Opposition No. 91288473 (TTAB Feb. 28, 2024) |

Death Wish also has buried many other infringing products without needing to go to court at all, including the examples below:

**Selected Examples of Enforcement Against DEATH-Formative Marks**

| Infringing Mark | Outcome |
|---|---|
| DEATH WISH DARK ROAST (Coffee) | *Death.* Removed from market following cease-and-desist. |
| DEATH WISH (Lip balm) | *Death.* Removed from market following cease-and-desist. |
| DEATH WISH DEADLIFTS (Apparel) | *Death.* Removed from market following Amazon takedown notice. |
| DEATH COFFEE (Coffee) | *Death.* Removed from market following Instagram takedown notice. |
| DEATH WISH CAFÉ (Coffee) | *Death.* Removed from market following Facebook takedown notice. |

Suffice to say, the DEATH WISH Marks are kind of a big deal in the coffee world. When consumers see DEATH on coffee, they think of Death Wish. Our client has worked hard and invested millions of dollars over many years to make its DEATH-formative marks highly distinctive of its widely loved products and brand.

C.   **SDI's Intended Willful Infringement**

SDI launched its Liquid Death water products in 2019, more than eight years after Death Wish and its priority coffee products. SDI has done well. Kudos. The two brands have coexisted peacefully because they operate in wholly different market areas: one sells coffee and the other sells sparkling water. The situation has even produced friendly ribbing on social media:



July 29, 2025
Page 5

As Liquid Death acknowledges above, the reason why Death Wish and Liquid Death have been able to coexist so far is that Liquid Death is "water, not coffee" and vice-versa.

That seems to be changing.  SDI is gearing up to invade our client's home property.  It recently filed four trademark applications with the U.S.P.T.O.: two for LIQUID DEATH for coffee and coffee-flavored beverages (App. Nos. 99166850 and 99166851), and two for LIQUID DEATH DEATHUCCINO also for coffee products (App. Nos. 99166846 and 99166849). All of these filings are based on a sworn "intent-to-use" representation to the federal government, meaning SDI has declared under oath that it has a "bona fide intent" to launch products under these marks.

This fits SDI's pattern of applying for marks ahead of launching product line extensions as part of retail resets in January of the following year.  For example, SDI applied to register trademarks for its ROOTBEER WRATH, DOCTOR DEATH, and KILLER COLA soda products in July 2024, then launched those products in January 2025. SDI also applied to register trademarks for its forthcoming energy drink products, LIQUID DEATH SCARY STRAWBERRY and DEATH TO DROWSY, in May and June 2025 and recently announced that those products will be released in January 2026.

Death Wish accordingly has limited time to act to ensure that SDI's conduct does not invade Death Wish's territory and irreparably harm its business.  Such injury and confusion is obvious.  The infringing marks duplicate the dominant element ("DEATH") of our client's DEATH WISH COFFEE CO.® marks.  The infringing products would appear in the same retailers and side-by-side with Death Wish's products in stores, where Death Wish sells both ready-to-drink canned coffee as well as other coffee beans and coffee products. And the products would share similar consumer bases and advertising, distribution, and marketing channels. In short, it would be a dead-to-rights case of willful infringement entitling Death Wish to attorneys' fees, costs, and potential punitive damages under California and federal law.  *See, e.g.*, *Pom Wonderful LLC v. Hubbard*, No. CV1306917RGKJPRX, 2016 WL 3621281, at *11 (C.D. Cal. June 29, 2016) (granting summary judgment of infringement in beverage trademark case where there were "numerous visual, aural, and semantic similarities" between the marks and "both parties' products are sold in single serve containers found in the refrigerated sections of supermarkets"); *E. & J. Gallo Winery v. Consorzio del Gallo Nero*, 782 F. Supp. 457, 459 (N.D. Cal. 1991) (granting summary judgment of infringement in beverage trademark case involving "GALLO" and "GALLO NERO" marks); *adidas Am., Inc. v. Payless Shoesource, Inc.*, No. CV 01-1655-KI, 2008 WL 4279812, at *16 (D. Or. Sept. 12, 2008) (awarding $50.3 million in compensatory damages and $15 million in punitive damages in consumer trademark infringement case).

### D. Death Wish's Demand

Our client will do anything to defend its territory and hopes this dispute can be resolved constructively so that both parties focus on selling products in their respective markets without interference.  Please confirm by no later than **August 8, 2025** that SDI will accede to Death Wish's aforementioned legal demands, namely to withdraw the Infringing Applications, and confirm it will not launch any coffee product using a DEATH-formative mark or branding.  Otherwise, it's time for Death Wish to re-channel Bronson.

While this dispute remains pending, please also confirm in writing that SDI and its agents and representatives (including outside advertising and marketing agencies) place an *immediate* litigation hold to forensically preserve all digital and hard copy documents and media (including emails, text messages, and other digital messaging, business and accounting records, sales and

July 29, 2025
Page 6

marketing materials, etc.) related in any way to this dispute, including without limitation, documents relating to its planned launch of beverages in the coffee market, its selection of its DEATH-formative trademarks, and its knowledge of Death Wish's brand and rights.

We look forward to your response. All rights reserved.

Very truly yours,

J. Noah Hagey