# EXHIBIT 2

# BRAUNHAGEY & BORDEN LLP

San Francisco & New York

**J. Noah Hagey, Esq.**
Managing Partner
hagey@braunhagey.com

September 30, 2025

**VIA EMAIL**

Ryan M. Kaiser
Amin Wasserman Gurnani
230 W. Monroe | Suite 1405
Chicago, IL 60606
Email: rkaiser@awglaw.com

Re:   Liquid Death's Infringement of DEATH WISH Trademarks

Dear Mr. Kaiser:

As you know, we serve as outside litigation counsel for Death Wish Coffee. We are in receipt of your September 5, 2025 response to Death Wish's July 29 demand letter regarding Supplying Demand, Inc.'s ("SDI's") infringing plans to launch DEATH-branded coffee products. Your letter indicates SDI intends to proceed with its plans to invade Death Wish's marks with "forthcoming coffee products." Your letter further admits that the infringing coffee products will appear side-by-side with Death Wish's products in the same retail and marketing channels, leading them to compete on the shelf, thus:

**DEATH CONFUSION**

 

**San Francisco**
747 Front Street, 4th Floor
San Francisco, CA 94111
Tel.: (415) 599-0210

**New York**
200 Madison Avenue, 23rd Floor
New York, NY 10016
Tel.: (646) 829-9403

September 30, 2025
Page 2

We urge SDI to abandon this folly. Its intended LIQUID DEATH-branded coffee products will confuse consumers, infringe the DEATH WISH Marks, and irreparably harm Death Wish's brand and business. Your letter attempts to nit-pick Liquid Death's claims with a variety of arguments, none of them serious or legally cognizable.

*First*, SDI asserts that the parties' products will not be confusingly similar because they will include additional words other than DEATH on the label or other design elements. This is a *crazy* argument, which we presume SDI's actual ownership and management have not endorsed. For example, does your client actually admit it would readily invite dozens of sparkling water competitors to invade SDI's brand rights by adding other words to the product? We can think of a few that might catch-on:

HARD DEATH SPARKLING WATER

WATER OF DEATHLY DELIGHT

DEATH TRAP WATER

DEATH DEFYING SPARKLING WATER

Thankfully, the law is clear that simply adding non-formative words to a mark does not reduce the likelihood of confusion, *i.e.*, because "similarities weigh more heavily than differences." *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1128 (9th Cir. 2014) (granting preliminary injunction against infringing beverage product despite alleged visual differences in packaging). This is why courts for decades have held that shared use of a dominant element like DEATH is sufficient on its own to show competing marks are confusingly similar. *E.g., E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1291 (9th Cir. 1992) (affirming injunction against use of Gallo combined with other words ("Cheese," "Cattle, " *etc*.) because "the shared dominant element of GALLO [was] sufficient evidence to support a finding of similarity").

Here, there is no question DEATH is the dominant element of Liquid Death's products – as they are of Death Wish's marks. That is how people in the real world perceive SDI's existing sparkling water trade dress – because that is what SDI's marketing has taught them. And that is also how trained brand experts view the brands. For example, *Men's Health* recently profiled an article of our clients' respective DEATH-branded products next to each other based on their identical formative punk-rock style marks:



September 30, 2025
Page 3

*Next*, SDI makes a "crowded field" defense, which also is dead on arrival. Your letter asserts that "the beverage field is crowded with DEATH-formative marks." But then your letter tellingly fails to cite a *single example* of anyone other than Death Wish using a DEATH-formative mark for coffee on any significant scale. Instead, you cite a handful of pending trademark applications and registrations with the USPTO. But as you know, there is a difference between registration and use of a trademark, and registrations alone say nothing about the existence (or, in this case, non-existence) of a crowded field.

Further, the reason no crowded field exists is because Death Wish has been diligent and overwhelmingly successful in enforcing its rights against infringing marks. Your letter dismisses these efforts because many infringers immediately were forced to abandon their infringement rather than taking the matter to trial. But the fact that past infringers agreed to cease and desist from infringement to avoid certain defeat is only further evidence of the strength of the DEATH WISH Marks. Death Wish has a 100% enforcement record against DEATH-formative marks in the coffee space. Your letter offers no reason to believe the result against Liquid Death will be any different.

*Last*, your letter concedes that SDI is explicitly aware of Death Wish and its trademark rights. You assert, however, that SDI will escape liability for willful infringement because its "awareness of Death Wish proves nothing." To the contrary, SDI's knowing adoption of an infringing mark in the face of Death Wish's superior trademark rights will support an award of enhanced damages, attorneys' fees, and punitive damages under applicable federal and state law. *See, e.g., Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.,* 778 F.3d 1059, 1074 (9th Cir. 2015) ("Use of an infringing mark, in the face of warnings about potential infringement, is strong evidence of willful infringement"). As if to confirm its disrespect for Death Wish's trademark rights in the coffee space, SDI has begun running advertisements stating that its upcoming energy drink products "feel[] like a coffee":



September 30, 2025
Page 4

*   *   *

At this stage, SDI needs to make a decision: unequivocally confirm it will abandon plans to market its LIQUID DEATH products as coffee, or face legal action. Aside from being correct as a matter of law, honoring Death Wish's rights align with your client's professed values and mission. Even today, SDI's website claims its business is built on an ethos of fair play "using health and humor to conquer the world" and being different from mega-corporations. But embarking to steal a pre-existing brand's mark and DEATH territory is not funny. It is precisely the kind of big bad bully activity which SDI once lamented … and aside from wasting money and reputation will directly expose Death Wish's own brands and marks to infringement from others who will parrot its admissions that using DEATH (combined with other words) cleanses a competitor of infringement.

Please confirm in writing by no later than **October 6, 2025** that SDI will (a) not launch any coffee beverage using any DEATH-formative marketing or brand name, (b) withdraw its infringing trademark applications, and (c) not become the kind of corporate thief that it has professed not to be.

All rights reserved.

Very truly yours,

J. Noah Hagey